J-S41015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS JAMAR BEAL | : | |
| | : | |
| Appellant | : | No. 373 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 8, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001389-2021

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:            **FILED: JANUARY 13, 2023**

Thomas Jamar Beal appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after being convicted, following a non-jury trial, of three counts of driving under the influence (DUI) and related offenses.  On appeal, Beal contends that the trial court erred by not suppressing the fruits of an unlawful vehicle stop.  After careful review, we affirm.

On January 25, 2021, at 1:37 a.m., Pennsylvania State Troopers Nathaniel Wachsmuth and Thomas Clark were traveling in a marked patrol vehicle in the area of North Spring Garden and East High Streets in Carlisle Borough.  The troopers' vehicle was equipped with an in-car computer and a high-definition digital camera system.  ***See*** Affidavit of Probable Cause,

_____

[*] Former Justice specially assigned to the Superior Court.

3/3/21, at 1. As the Troopers were "just coming around the corner off of Louther Street on to Spring Garden [Street]," Trooper Wachsmuth observed Beal, driving a white SUV, enter the intersection of East High Street from North Spring Garden Street and make a left turn onto East High Street without activating his turn signal. N.T. Suppression Hearing, 11/23/21, at 16; *see also* Dash Cam Video, Camera 0, Video 1, 1/25/21, at 01:34:52-56. Trooper Wachsmuth followed Beal's vehicle for approximately two miles as it approached Interstate 81 (I-81). Trooper Wachsmuth testified that as he followed the SUV, he saw it "weaving within the lane designators prior to making a right-hand-turn onto the on-ramp for I-81" and watched the vehicle "cross over the center white divider line with both . . . driver's side tires." N.T. Suppression Hearing, 11/23/21, at 6. At that point, Trooper Wachsmuth activated his lights and sirens and initiated a traffic stop for Beal's failure to use a turn signal and for crossing over the center divider line. *Id.* at 7.

When Trooper Wachsmuth approached Beal's vehicle, he immediately noticed a strong odor of marijuana coming from the SUV and observed that Beal's eyes were "bloodshot and glassy." *Id.* at 8-9. Trooper Wachsmuth asked Beal for his license. Beal, who had difficulty with his phone trying to find the proper documentation, ultimately told the trooper that he did not have a license at the time and that he was in the process of getting his license restored. *Id.* at 9. Trooper Wachsmuth then ran Beal's license number in the police data base and discovered that it was suspended; the trooper also

verified Beal's license suspension through PennDOT's certified driving records.[1]

Trooper Wachsmuth asked Beal to exit the vehicle and asked Beal if there was any marijuana inside the vehicle or if Beal had smoked anything that day. Beal told Trooper Wachsmuth that he had "smoked Loud at a hookah lounge"[2] that evening, but that there was no marijuana in his SUV. *Id.* at 10. Trooper Wachsmuth then asked Beal to perform standard field sobriety tests, including the walk-and-turn test, the one-leg stand, the lack of convergency eye test, and the Modified Romberg Test.[3] *Id.* at 9. Trooper Wachsmuth observed several indicia of impairment as Beal performed the tests. *Id.* at 11. As a result, Trooper Wachsmuth placed Beal under arrest for suspected DUI. *Id.* Beal was transported to the Carlisle UPMC Pinnacle Hospital, where he consented to a blood draw. Beal's blood tested positive for three types of THC and alprazolam. *Id.*

---

[1] At the time of the traffic stop, Beal had eight prior convictions for driving under suspension.

[2] Trooper Wachsmuth interpreted this to mean that Beal had been smoking marijuana. *Id.* at 10. In fact, "loud weed" is a very potent and pungent form of cannabis. *See https://greencamp.com/what-is-loud-weed/* (last visited 11/30/22).

[3] The Romberg Test, a field sobriety test administered for 30 seconds by law enforcement, involves an individual standing with his or her shoes on, feet together, eyes closed, head tilted back, and hands to his or her side with no added support. https://www.audiologyresearch.org/romberg-test/ (last visited 11/29/22).

Beal was subsequently charged with[4] DUI-controlled substance (Schedule 1),[5] DUI—controlled substance (Metabolite),[6] DUI—controlled substance (impaired ability),[7] failure to use required signals for turning movements,[8] and driving under suspension—6th or subsequent offense.[9]

On September 20, 2021, Beal filed a pre-trial motion to suppress claiming that the vehicle stop was illegal where Beal "used his turn signal to make the left turn" and "did not cross over the lane line markings." Omnibus Pretrial Motion, 9/20/21, at ¶¶ 15-16. The court held a suppression hearing on November 23, 2021, at which Trooper Wachsmuth testified. Following the hearing, the court entered an order dismissing Beal's suppression motion, finding that "the trooper's testimony was credible and that the Commonwealth has met its burden of proof."[10] Order, 12/1/21. A non-jury trial was held on

---

[4] Beal was also charged with driving on roadways laned for traffic. He was acquitted of this offense, however, at his non-jury trial. N.T. Non-Jury Trial, 1/20/22, at 26.

[5] 75 Pa.C.S. § 3802 (D)(1)(i).

[6] *Id.* at § 3802(D)(1)(iii).

[7] *Id.* at § 3802(D)(2).

[8] *Id.* at § 3334(A).

[9] *Id.* at § 1543(A).

[10] Notably, at the conclusion of the suppression hearing, the Commonwealth's attorney stated that she agreed with the public defender that "the weaving within [Beal's] lane of travel on Trindle Road wouldn't necessarily be a traffic violation in and of itself." N.T. Suppression Hearing, 11/23/21, at 20. Thus,
*(Footnote Continued Next Page)*

January 20, 2022, at which Trooper Wachsmuth testified. Following trial, the Honorable Christylee L. Peck found Beal guilty of all offenses. Beal was sentenced to 72 hours of incarceration and a $1000 fine for the DUI offenses,[11] a $25 fine for the failure to signal offense, and 30 days of incarceration and a $1,000 fine for the suspended license offense, to run consecutive to Beal's DUI sentence.

Beal filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Beal raises the following issue: "Did the court err when it denied [Beal's] omnibus pretrial motion to suppress evidence?" Appellant's Brief, at 6.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Jones**, [] 874 A.2d 108, 115 (Pa. Super. 2005) (quoting **Commonwealth v. LaMonte**, [] 859 A2d 495, 499 (Pa. Super. 2004)).

> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

we confine our review to whether the trooper had probable cause to stop Beal for allegedly failing to use his turn signal when making a left-hand turn.

[11] For purposes of sentencing, counts two and three (DUI—Metabolite and DUI—impaired ability) merged with count 1 (DUI—Schedule 1).

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa. Super. 2008) (citations omitted).

An appellate court's scope of review in a suppression case is limited to the evidentiary record of the pre-trial hearing[12] on the suppression motion. *In re L.J.*, 79 A.3d 1073 (Pa. 2013). Moreover, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019) (quoting *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal

---

[12] At the suppression hearing, the defense argued:

> Judge, we would ask the [c]ourt to grant our suppression motion, Omnibus Pretrial Motion to Suppress. **We don't believe that the video [was] clear in showing that there was no turn signal used.** By the time the trooper is even entering Spring Garden Street with the [video] running, the car is already mid[-]turn at that point. By the time he gets off Spring Garden, the car is already turned; and for he said less than two miles, but even for that approximate distance, he said there was some weaving within the lane, which, again, I argue that is not a violation of the Vehicle Code.
>
> *  *  *
>
> **I don't think there was enough here to show that there was any kind of impaired driving and a violation of the Vehicle Code.** I don't think the video clearly shows what the testimony was today, and because of that, we are asking the [c]ourt to suppress the stop and any evidence as a result thereof.

N.T. Suppression Hearing, 11/23/21, at 18-19 (emphasis added).

conclusions are nonbinding on appeal and subject to plenary review. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017).

It is well established that:

A police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the [V]ehicle [C]ode has taken place for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S.[A.] § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop.

*Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (citation omitted).

Beal contends[13] the vehicle stop was illegal where the police video footage "did not clearly show" that Beal failed to use a turn signal as he turned

_____

[13] Beal also argues in his appellate brief that:

The video showed that it was dark outside and the street that the affiant was initially travelling on, East Louther Street, has evergreen-type trees on the right side, as the vehicle is approaching the intersection with North Spring Garden Street. This would have made it difficult to see around the corner onto North Spring Garden Street.

Appellant's Brief, at 11. Beal did not raise this specific argument at the suppression hearing and his suppression motion is devoid of any claim that the officer's vision was impaired by road-side trees such that he could not see Beal fail to signal before making the left-hand turn. *See* N.T. Suppression Hearing, 11/23/21, at 15-17 (public defender's cross-examination of Trooper Wachsmuth), *id.* at 18 (public defender arguing video not clear showing no turn signal used and "[b]y the time the trooper is even entering Spring Garden Street with the [video] running, the car is already mid[-]turn at that point"). In any event, the suppression court viewed the video footage, which would have included any brush or vegetation on the side of Louther Street and
*(Footnote Continued Next Page)*

left from Hight Street onto Spring Garden Street and where Trooper Wachsmuth "was not in a position to view [Beal] as he [] began to make the left turn." Appellant's Brief, at 9-10. We disagree.

Trooper Wachsmuth testified that he clearly observed the SUV at the subject intersection "before it would have been captured on [the trooper's] camera." *See* N.T. Suppression Hearing, 11/23/21, at 17. Moreover, in her Rule 1925(a) opinion, the suppression judge states that she determined Trooper Wachsmuth's view of the turn was better than that of his vehicle's camera and that the portion of the video depicting Beal's car turning through the intersection had a "grainy quality" making it "not clear" as to whether "the turn signal is being used." Trial Court Opinion, 7/16/22, at 3-4. Additionally, the suppression judge stated that she watched the video and that it supported Trooper Wachsmuth's testimony that he could see Beal's vehicle as it made the left-hand turn. *Id.* at 7, 8 n.33.

Therefore, while the video may not clearly or completely capture whether the SUV's turn signal was activated as it made the left-hand turn, the video does not *contradict* the trooper's first-hand observation of Beal failing to use his left turn signal. *Id.* at 16 (Trooper Wachsmuth testifying video first shows SUV when it is "[j]ust entering the intersection"); *id.* at 22 (Trooper

_____

determined that Trooper Wachsmuth was credible and that he had probable cause to stop Beal.

Wachsmuth testifying on re-direct examination he saw SUV at intersection "before it [was] captured on [his] camera").

This is not a case where the police video footage contradicts or rebuts Trooper Wachsmuth's testimony. **See Commonwealth v. Griffin**, 116 A.3d 1139, 1143 (Pa. Super. 2015) (where officer's testimony at suppression hearing not consistent with what was depicted on police video, this Court reversed suppression court, considering it "one of those rare cases where a dash cam video, which was made a part of the certified record, can contradict a trial court's factual finding often based on its credibility determinations"); **see also Commonwealth v. Padilla**, 270 A.3d 1166 (Pa. Super. 2021) (Table)[14] (where officer's body cam footage did not capture officer's initial interaction with defendant car's other occupants and where officer's body cam did not reveal everything officer observed, trial court was free to credit officer's testimony where the footage does not contradict that testimony).[15] Rather, the relevant video footage fails to clearly depict the events as Beal proceeded through the intersection making the left-hand turn.

Because the suppression court specifically found Trooper Wachsmuth credible, **id.** at 20, which included his testimony that he personally observed Beal make a left-hand turn without using his turn signal, the court correctly

---

[14] **Commonwealth v. Padilla**, *appeal denied*, 282 A.3d 274 (Pa. 2022).

[15] A Superior Court unpublished memorandum decision filed after May 1, 2019, may be cited for its persuasive value. **See** Pa.R.A.P. 126(b)(1), (2).

concluded that the Commonwealth met its burden of proof. **See Commonwealth v. Goral**, 222 A.3d 802 (Pa. Super. 2019) (Table)[16] (distinguishing **Griffin** and concluding where video did not "blatantly contradict the evidence supporting [defendant's] conviction," trial court did not abuse its discretion in finding defendant committed summary offenses, including failure to come to a complete stop).

Under these circumstances, we find no merit to Beal's contention on appeal. The suppression court was free to credit Trooper Wachsmuth's testimony where the video footage did not contradict that testimony. **See Luczki**, **supra**; **see also Commonwealth v. Ford**, 141 A.3d 547, 556 (Pa. Super. 2016) ("This is not a case where the evidence is so weak and inconclusive that no probability of fact can be drawn from it."). Moreover, Trooper Wachsmuth's observations, alone, are legally sufficient to provide probable cause to stop a vehicle for a Vehicle Code violation. **See also Commonwealth v. Calabrese**, 184 A.3d 164 (Pa. Super. 2018). Thus, we conclude that the suppression court did not err in denying Beal's motion to suppress where the Commonwealth established that Trooper Wachsmuth had probable cause to stop Beal for failing to use his turn signal.

---

[16] **See supra** at n.8.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2023