**COMMONWEALTH of Pennsylvania**

**v.**

**Glenn GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 6, 2015.

Filed May 12, 2015.

Timothy G. LaVoie, Public Defender, Pittsburgh, for appellant.

Rebecca G. McBride, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and ALLEN, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Glenn Griffin appeals the judgment of sentence entered on April 17, 2014, in the Court of Common Pleas of Allegheny County. Following careful review, we reverse.

The facts of this case, as established at the suppression hearing, are as follows. In the early morning hours of May 1, 2013, Pittsburgh police officers conducted a traffic stop based upon their observation of an inoperable rear brake light on the vehicle. (Notes of testimony, 11/14/13 at 15.)[1] The cruiser's dash cam was activated a few moments before the stop took place and it recorded the entire incident. Officer Nathan Auvil testified that appellant, a passenger in the vehicle, stepped out of the rear passenger side door and proceeded to walk toward the police car. (Id. at 18.) When appellant was immediately ordered

---

1. Officer Jason Cyprowski clarified that the vehicle stopped on its own before the officer activated the cruiser's lights. (Id. at 44.)

to get back in the vehicle, he went back to it but he did not get into the car. (*Id.* at 18–19.)

Officer Auvil believed that appellant was armed as he observed appellant "adjusting his pants" and "looking around". (*Id.* at 19–21.) Based upon Officer Auvil's experience and training,[2] along with his observation that appellant was "generally just moving his clothing more than what would be usual" and "looked nervous," Officer Auvil conducted a *Terry*[3] frisk. (*Id.*)

Q. And what did you feel inside?

A. I felt a large baggie with what felt to be a powder like substance inside and the baggie was knotted at the top.

Q. Okay. And based on your training and education, experience, et cetera what did you believe you were feeling?

A. I thought it was packaged narcotics.

Q. Okay. Did you have to manipulate it in anyway upon—when you first felt it, did you have to manipulate it in any way to draw that conclusion?

A. I knew immediately, however I did manipulate further because the item was so large I wanted to make sure there was nothing else behind that item.

Q. Okay. Can you describe the pat down, are you squeezing the clothing or are you just touching it? How is it that you are doing it as you go down the body?

A. More so touching but I like to make sure I get a good pat down, make sure I don't miss anything.

Q. Okay. And this is what you felt?

A. Yes.

Q. What could have been behind the baggie that you thought might be a weapon?

A. Possibly a small firearm, maybe a knife.

*Id.* at 23–24.

On cross examination, Officer Auvil agreed that he engaged in a "fair amount of manipulation," but justified this due to his uncertainty of whether or not there was something else in the pocket. (*Id.* at 35–36.) Officer Auvil stated that he knew the object he felt was not a weapon and that he asked appellant what was in his pocket. (*Id.* at 36.) At this point, Officer Auvil did not remove the items from appellant's pocket but turned appellant over to Officer Cyprowski while Officer Auvil proceeded to pat-down the driver who had come out of the vehicle. Officer Auvil advised Officer Cyprowski of the item he had felt in appellant's pocket.

Officer Cyprowski testified that he handcuffed appellant and performed a "pat down on the immediate area where Officer Auvil had told me where he had felt the packaged narcotics" and that it was immediately apparent to Officer Cyprowski that it was controlled substances. (*Id.* at 45.) At that time, Officer Cyprowski recovered what was later determined to be 38 knotted baggie corners of powder cocaine. (*Id.* at 47.) Following the pat-downs, the officers recovered a firearm from the vehicle.

Appellant was charged with one count each of person not to possess a firearm, receiving stolen property, carrying a firearm without a license, possession of a controlled substance with intent to deliver, and possession of a controlled substance. On September 24, 2013, a motion to suppress was filed. On November 14, 2013,

---

**2.** On cross-examination, the officer acknowledged this was only his second drug arrest. (*Id.* at 33.)

**3.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

following a hearing, the Honorable Donald Machen denied the motion.

A non-jury trial was held on January 29, 2014; Judge Machen found appellant guilty of simple possession of a controlled substance and not guilty of the remaining charges. On April 17, 2014, appellant was sentenced to one year less one day to two years less two days' incarceration with credit for time served and one year of probation.

A timely notice of appeal was filed on May 15, 2014. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

I. DID THE LOWER COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FOLLOWING A "TERRY FRISK," WHERE THE ILLEGAL NATURE OF THE EVIDENCE SEIZED FROM APPELLANT WAS NOT IMMEDIATELY APPARENT WITHOUT FURTHER MANIPULATION?

Appellant's brief at 5.

Appellant argues that the trial court improperly denied his motion to suppress because its factual findings were not supported by the record, resulting in the trial court making an erroneous legal conclusion. (Appellant's brief at 13.) Finding the scope of the pat-down exceeded lawful bounds, we agree.

 In reviewing the trial court's suppression ruling, we are guided by the following principles:

The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, [the appellate court] considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, [the court is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Johnson,* 33 A.3d 122, 125–126 (Pa.Super.2011) (internal quotation marks, citations, and footnote omitted).

 Warrantless searches are presumptively unreasonable; however, exceptions exist. One exception is found in *Terry, supra.* In *Terry,* the United States Supreme Court granted authority to police officers to pat-down or frisk a suspect for weapons based only upon the reasonable belief that criminal activity is afoot, and that the suspect may be armed and dangerous. *Id.* at 27, 88 S.Ct. 1868.[4]

Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

4. The question of whether the officers had reasonable suspicion to stop and frisk appel-

lant is not at issue in this appeal.

*Commonwealth v. Stevenson,* 560 Pa. 345, 744 A.2d 1261, 1264–1265 (2000).

In explaining the plain feel doctrine, the supreme court has stated:

[In *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court] adopted the so-called plain feel doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object ... Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband.

*Id.* at 1265.

▆ Once the initial pat-down dispels the officer's suspicion that the suspect is armed, any further poking, prodding, squeezing, or other manipulation of any objects discovered during that pat-down is outside the scope of the search authorized under *Terry, supra. Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075, 1082 (1998). Where an officer needs to conduct some further search to determine the incriminating character of the contraband, the search and subsequent seizure is not justified under the plain feel doctrine and is unlawful. *Id.* An officer's subjective belief that an item is contraband is not sufficient unless it is objectively reasonable in light of the facts and circumstances that attended the frisk. *See Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1163 (2000).

▆ Although we agree that the officers properly stopped the vehicle and had reasonable suspicion to conduct a *Terry* frisk, we cannot agree with the trial court that the immediately apparent requirement of the plain feel doctrine was met in the instant case. As appellant contends, the officer's testimony at the hearing is not consistent with what was depicted on the video. We agree; the video clearly depicts the officer repeatedly manipulating appellant's pocket. This is one of those rare cases where a dash cam video, which was made a part of the certified record, can contradict a trial court's factual finding often based on its credibility determinations.

The video shows extensive, immediate further manipulation of [appellant's] pocket. The video, at 01:49:46, displays Officer Auvil shaking, squeezing, rubbing, and pinching the contents of [appellant's] pocket between his thumb and finger repeatedly upon the first instant of contact. Officer Auvil even maintains a tight squeeze and continues to grip [appellant's] pocket, rubbing the contents with his right thumb, when he asked 'What's this?' (Video, at 01:49:49). The multiple inches of [appellant's] right leg that became visible compared to his left while Officer Auvil continued to tug and jostle its contents highlight the intent on further manipulating the contents of [appellant's] pocket, after Officer Auvil took his hand off the shorts to place [appellant's] hand back on the car, he brought his right hand back to the pocket and squeezed its contents for additional seconds. (Video, 01:49:57.)

Appellant's brief at 15.

While Officer Auvil testified he immediately knew that the pocket contained narcotics, he explained that he then had to "manipulate further because the item was so large I wanted to make sure there was nothing else behind it." (Notes of testimo-

ny, 1/14/13 at 23.) The video clearly rebuts this statement. In fact, Officer Auvil asked appellant "What's this?" while squeezing and tugging the pocket. (Video, 01:49:49.) Further, on cross-examination, the officer acknowledged that he knew the object he felt was not a weapon and that he never felt anything apparent to be a weapon during the pat-down. (Notes of testimony, 1/14/13 at 35–36.)

Given the officer's admitted manipulation, we find that the nature of the objects in appellant's pocket could not have been immediately apparent. While Officer Auvil testified that he felt something "soft, granular," that led him to believe appellant's pocket contained narcotics, he became aware of this from an unconstitutional squeezing, rubbing, and manipulation. Simply put, we conclude that the officer's tactile impression of the object was not immediately apparent. As our supreme court in *Graham, supra,* explained:

> In *Dickerson,* the U.S. Supreme Court legitimized the seizure of contraband discovered during the scope of a *Terry* frisk where the officer feels an object whose contour or mass makes its criminal character immediately apparent. However, noting that the officer in *Dickerson* "determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapons," the Court held that:
>
> > ... the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to "[t]he sole justification of the search [under *Terry:*] ... the protection of the police officer and others nearby." It therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize ...

Therefore, the *Dickerson* court illustrated that a search which in any way manipulates the contents of a defendant's pocket is not authorized under *Terry.* *Graham, supra* at 1080–1081 (citations omitted).

Our review of the record, in conjunction with the foregoing case law, supports appellant's claim that the physical evidence in this case should have been suppressed. We reverse the court's denial of appellant's suppression motion.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.