J-S02044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL JOSEPH PREZIOSI | |
| Appellant | No. 443 EDA 2015 |

Appeal from the Judgment of Sentence entered September 5, 2014
In the Court of Common Pleas of Northampton County
Criminal Division at Nos: CP-48-CR-0004211-2013 and
CP-48-CR-0000435-2014

BEFORE:  SHOGAN, LAZARUS, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 24, 2016**

Appellant, Daniel Joseph Preziosi, *pro se* appeals from the September 5, 2014 judgment of sentence entered by the Court of Common Pleas of Northampton County ("trial court"), following a jury trial that resulted in him being convicted of robbery, two counts of simple assault, theft by unlawful taking (movable property), receiving stolen property, and escape.[1]  After careful review, we affirm.

The facts and procedural history of this case are uncontested.  On October 19, 2013, Appellant was charged with multiple offenses, including robbery, simple assault, theft by unlawful taking, and receiving stolen

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 2701(a)(3), 3921(a), 3925(a), and 5121(a), respectively.

property, at docket number 4211 (hereinafter "First Case"). The affidavit of

probable cause accompanying the complaint provided:

> On 10/18/2013 at about 1414 hrs [Detective Seargent Michael Melinsky, Colonial Regional Police Department,] received a call from Wunderler's Market located at 429 East Main St[reet,] Bath[, PA] for an armed robbery that had just occurred at that location. Upon [Detecive Melinsky's] arrival, the victim[s] of the robbery Donald and Joyce Wunderler detailed that they were both at the store when an unknown white male entered the store and brandished a dark[-]colored semi-automatic style handgun. The unknown male demanded the money in the cash register. Joyce Wunderler stated that the male was given the money out of the cash register, mostly 1, 5 and 10 dollar bills. After the actor received the money he fled on foot, north from the store.

> [Detective Melinsky] viewed and copied the store surveillance video which was working at Wunderler's Market at the time of the robbery. The video shows the male that was described by the Wunderler's brandishing the firearm, robbing the store.

> [Detective Melinsky] interviewed a Michael Flyte[.] Flyte reported seeing a suspicious vehicle in the area of Wunderler's Market at the time of the robbery. Flyte described the vehicle as a 1990's 4-door beige Toyota Camry with front end damage, missing a front headlight assembly. The vehicle's rearview mirror was dangling from the windshield and the rear of the vehicle had a sticker, a heart-shaped zebra pattern, outlined in pink. Flyte described the driver of the car as a white male in his mid-20s about 6 feet tall and a 175 lbs., wearing black coat with a white hood. [Detective Melinsky] showed a picture of the suspect from Wunderler's Market to Flyte and [Flyte] identified the male in the picture as the person driving the suspicious vehicle.

> The vehicle that was identified by Flyte was located later that night parked on the block of East Main St. in Bath. Surveillance was conducted on the vehicle and [Appellant] was observed opening the vehicle and retrieving something from the rear seat. [Detective Melinsky] and Sgt. Enstrom identified themselves to [Appellant]. [Appellant] was then observed throwing [a] pill bottle under a parked car. [Appellant] was then taken into custody and transported to police headquarters. Search of [Appellant] when taken into custody revealed that [Appellant] had in his pants pocket a stack of money, which was mostly in one and five dollar denominations.

> At police headquarters, with [Appellant] in custody [Detective Melinsky] and assisting officers viewed the

surveillance video from Wunderler's Market. [Detective Melinsky] and assisting officers confirmed that it was [Appellant] on the video committing the robbery.

[Detective Melinsky] had photo lineups created with [Appellant's] picture in the lineup. [Detective Melinsky] showed the photo lineup to both Mr. and Mrs. Wunderler separately. They both identified [Appellant] as the person who robbed their store earlier in the day.

Affidavit of Probable Cause, 10/19/13. On December 18, 2013, constables transported Appellant to a district court for a preliminary hearing, but Appellant managed to flee from the constables' custody. Appellant subsequently was arrested and charged with one count of escape at docket number 435-2014 (hereinafter "Second Case").

On March 24, 2014, Appellant, through counsel, filed an omnibus pretrial motion in the First Case, seeking, *inter alia*, to suppress all incriminating evidence. In support of suppression, Appellant alleged that the police lacked probable cause to arrest him without a warrant. He also alleged that the police lacked probable for the issuance of a search warrant for the vehicle. The trial court disagreed, denying, among other things, Appellant's suppression motion following a hearing. The court concluded that probable cause existed to arrest Appellant and to issue the search warrant for the vehicle. In so doing, the trial court rendered detailed findings:

1. On the date of the robbery, at approximately 2:14 p.m., Colonial Regional Police received notification that an armed robbery took place at Wunderler's Market in Bath, Pennsylvania;

2. Detective Sergeant Melinsky responded to the scene along with other patrol vehicles and interviewed the victims and the owners of the market, Joyce and Donald Wunderler;

3. The victims provided information to Detective Melinsky that included a description of the perpetrator who brandished a black semiautomatic handgun, was wearing a black jacket with a grey hoodie, was approximately 6 foot tall and approximately 175 pounds. The perpetrator was a white male. The Wunderlers handed the robber approximately $100 in cash in small bills;

4. Detective Sergeant Melinsky obtained video footage from the surveillance cameras within the market and reviewed the footage. He was able to view images of the perpetrator of the robbery which matched the description provided by the victims;

5. Detective Sergeant Melinsky was also able to view on the surveillance videotape the perpetrator walk into the store, point the gun at the victims, and commit the robbery. He was also able to view the perpetrator flee out the door of the market;

6. Later at the station, Detective Sergeant Melinsky again reviewed the videotape and, in fact, viewed the videotape at least five or six times. Each viewing included images of the perpetrator;

7. Detective Sergeant Melinsky and other members of the Colonial Regional Police Department obtained a still shot of the perpetrator from the surveillance videotape and disseminated it to police and to the media. The still shot photograph was admitted as Commonwealth's Exhibit 1 and depicted a white male in a gray hooded sweatshirt, which matched the description provided by the victims;

8. Later in the day on the afternoon of the robbery, Officer Kovalosky received a call from a witness named Michael Flyte who had been in the area of the market at the time of the robbery. Michael Flyte had prepared a written statement of his own accord and provided written information to the police detailing what he observed with respect to the robbery;

9. Michael Flyte provided information to police that he saw a beige four-door Toyota Camry with front end vehicle damage near the headlight pull in quickly to a parking place near the market. The vehicle ran a stop sign in so doing;

10. Michael Flyte witnessed a male get out of the car and walk down an alley towards the market;

11. Approximately several minutes later, Michael Flyte witnessed the male return from the market. It was a white male, wearing a gray hoodie and black jacket. Michael Flyte's description matched that of the perpetrator as provided by the victims, and as depicted on the video;

12. Detective Sergeant Melinsky showed the still shot photograph obtained from the surveillance video to Michael

Flyte. Michael Flyte confirmed that was the male that he had observed;

13. Michael Flyte also provided police with information that the [male's] vehicle contained a distinctive sticker in the rear window. It was a heart shaped sticker decal outlined in pink with zebra stripes;

14. Detective Sergeant Melinsky conducted research on the sticker and was able to obtain a computer image of the sticker which Michael Flyte confirmed was similar to the image he saw on the car;

15. At approximately 1 a.m. the next morning, Detective Sergeant Melinsky received a telephone call from Sergeant Enstrom of the Colonial Regional Police indicating that Mr. Enstrom observed a four-door beige Toyota Camry with a sticker matching the description provided by Michael Flyte parked in Bath near the Daily Grind Coffee Shop, and near the Fox Hotel/Gentlemen's Club;

16. Detective Sergeant Melinsky, Sergeant Enstrom, and other members of the police department conducted surveillance on the vehicle;

17. Prior to surveillance taking place, upon information believed, Sergeant Enstrom had observed a male approaching the vehicle. Sergeant Enstrom did not have backup with him at the time, and therefore, sought backup and surveillance was conducted of the vehicle;

18. Approximately 1:46 a.m. Detective Sergeant Melinsky observed a male walk out of the Fox Hotel, approach the car, open the back door of the car, and get in. The male matched the description of the perpetrator as provided by the victims and by Michael Flyte. The male was the same male depicted on the surveillance videotape and the still shot obtained therefrom. At which point, [Appellant] was arrested;

19. Detective Sergeant Melinsky indicated that he knew from the video that he had reviewed multiple times, from the still photograph, and from the description provided by the victims and Michael Flyte that the person getting into the car was the person who perpetrated the robbery;

20. [Appellant] was taken into custody and searched incident to arrest. Money was found in [Appellant's] pocket, including approximately eight $5 bills, and ten $1 bills;

21. The money found in [Appellant's] pocket is the subject of the motion to suppress. The motion to suppress the money is denied;

22. Subsequently, the vehicle was impounded, and a search warrant was obtained for its contents. During the search of the vehicle, a gun was found in the truck, which matched the description and depiction of the gun used in the robbery as described by the victims and as seen on the videotape. The gun found in the truck is the subject of the suppression motion. The suppression motion with respect to the gun and any other items found in the car pursuant to the search warrant is denied;

23. By way of further findings of fact that the arrest was supported by probable cause, the Commonwealth admitted Exhibits C-1 through C-5 depicting photos of [Appellant], which were consistent with the description provided by the victims of the perpetrator of the robbery; photographs of the vehicle, which were consistent with the description of the vehicle provided by the witness, Michael Flyte; photographs of the sticker on the rear of [Appellant's] vehicle, which were consistent with the description of the sticker provided by the witness Michael Flyte; and a photo of a hooded sweatshirt and black jacket found inside [Appellant's] vehicle;

24. In addition, Sergeant Enstrom testified consistently with the testimony of Detective Sergeant Melinsky regarding the incidents surrounding [Appellant's] arrest;

25. Detective Gary Hammer also testified consistently with Detective Sergeant Melinsky concerning the incidents surrounding [Appellant's] arrest;

26. The [trial] court finds, not only that the arrest was supported by sufficient probable cause, but that the probable cause to arrest [Appellant] was overwhelming.

Trial Court Opinion, 6/17/14. Prior to trial, the Commonwealth moved to consolidate the cases at docket numbers 4211-2013 and 435-2014.[2] The trial court granted the consolidation motion. Following a jury trial, Appellant was convicted of robbery, two counts of simple assault, theft by unlawful taking, and receiving stolen property in the First Case. The trial court

---

[2] Alternatively, the Commonwealth provided Appellant notice under Pa.R.E. 404(b) (bad acts) of its intention to introduce evidence of the First Case in the Second Case and vice versa. The Commonwealth, however, withdrew the Rule 404(b) notice at trial. *See* N.T. Trial, 6/3/14, at 39.

sentenced Appellant to 90 to 240 months' imprisonment for the armed robbery conviction. The trial court imposed no further penalty on the remaining convictions in the First Case. In the Second Case, the jury found Appellant guilty of escape, and the trial court imposed a sentence of 27 to 84 months' imprisonment consecutive to the sentence imposed in the First Case. Thus, Appellant received an aggregate sentence of 117 to 324 months in prison.

On September 12, 2014, Appellant filed a post-sentence motion, challenging, *inter alia*, the denial of suppression, the consolidation of the cases, and the in-court identification of Appellant. The trial court denied the motion on January 5, 2015. Appellant timely appealed to this Court.[3]

On appeal,[4] Appellant essentially raises three issues for our review:

1) Did the trial court err by denying the [m]otion to [s]uppress [e]vidence in the instant matter?

2) Did the trial court err by improperly consolidating the criminal informations?

_____

[3] Following the filing of the appeal notice, Appellant petitioned the trial court to proceed *pro se*. The trial court held a hearing at which it colloquied Appellant on his decision to represent himself. On March 6, 2015, the trial court granted Appellant's petition to proceed *pro se*.

[4] We note Appellant's pre-sentence investigation report is part of the original record. It should be noted that pursuant to Pa.R.Crim.P. 703 a pre-sentence investigation report is "confidential, and not of public record," which is available only to the authorities or the individuals listed therein. **See** Pa.R.Crim.P. 703. Accordingly, the Northampton County Clerk of Courts should take all necessary steps to preserve the confidential nature of the pre-sentence investigation report by sealing it.

   3) Did the trial court err by allowing irrelevant evidence relating
      to the consciousness of guilt in violation of Pa.R.E. 404(b)(2)?

Appellant's Brief at 5.  To the extent Appellant argues that the trial court (a)

erred in deciding his pretrial omnibus motion prior to the commencement of

trial in violation of Pa.R.Crim.P. 580; (b) erred by allowing improper in-court

identification evidence to be introduced and admitted at trial; and (c) abused

its discretion by imposing a manifestly excessive sentence, such arguments

are waived.    Appellant failed to challenge the trial court's timing for

disposing of the omnibus motion in the trial court.  **See** Pa.R.A.P. 302(a)

("Issues not raised in the lower court are waived and cannot be raised for

the first time on appeal.").  Our review of the record reveals that Appellant

failed to object to his in-court identification by Joyce Wunderler.  **See** N.T.

Trial, 6/3/14, 101-02.  Finally, as the Commonwealth points out, Appellant

cannot challenge the discretionary aspects of his sentence on appeal

because he failed to do so in a post-sentence motion before the trial court.

It is settled that "[i]ssues challenging the discretionary aspects of a sentence

must be raised in a post-sentence motion or by presenting the claim to the

trial court during the sentencing proceedings.   Absent such efforts, an

objection  to  a  discretionary  aspect  of  a  sentence  is  waived."

***Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012) (citation

omitted), ***appeal denied***, 75 A.3d 1281 (Pa. 2013).  Even if these issues

were not waived, we still would conclude that Appellant is not entitled to

relief based on the reasons outlined in the trial court Rule 1925(a) opinion, which we fully adopt.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa. Super. 2015) (citation omitted). Our scope of review is limited to the evidence presented at the suppression hearing. ***In the interest of L.J.***, 79 A.3d 1073, 1088-89 (Pa. 2013).

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's 1925(a) opinion authored by the Honorable Jennifer R. Sletvold, cogently disposes of Appellant's issues on appeal. ***See*** Trial Court Rule 1925(a) Opinion, 3/26/15, at 3-19. With respect to the first issue, the trial court concluded, based upon its findings detailed ***supra***, that it did not err in denying Appellant's suppression motion because probable cause to arrest was overwhelming to support his arrest and the resulting search of his person and vehicle. On the second issue, the trial court determined that it did not abuse its discretion in consolidating the cases for trial because they were

interrelated. As for the third issue, the trial court determined that the Commonwealth withdrew at trial its notice to introduce evidence under Rule 404(b).[5] The trial court noted that the Commonwealth was permitted to argue to the jury that Appellant's flight from the preliminary hearing was indicative of a consciousness of guilt.

In sum, we affirm Appellant's convictions in both cases. We direct that a copy of the trial court's March 26, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2016

---

[5] Rule 404(b)(3) provides that "[i]n a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3).