J-S17024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TRACEY FLOYD, SR. | |
| Appellant | No. 403 EDA 2016 |

Appeal from the Judgment of Sentence Entered November 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0012517-2014

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 17, 2017**

Appellant Tracey Floyd, Sr. appeals from the November 25, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following his bench convictions for carrying a firearm without a license and carrying a firearm on the streets of Philadelphia.[1] Upon review, we affirm.

The facts and procedural history of this case are undisputed.  Briefly, on October 7, 2014, City of Philadelphia Police Officer Judith Kinniry observed, in plain view, an open bottle of alcohol in Appellant's vehicle. When Officer Kinniry attempted to retrieve the bottle from inside the vehicle,

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1) and 6108, respectively.

she discovered a gun. Appellant subsequently was charged with the above-referenced offenses.

On March 17, 2015, Appellant filed a motion to suppress, arguing that the police did not have probable cause to search his vehicle. On July 9, 2015, the trial court conducted a suppression hearing. It summarized in detail the facts elicited at the hearing as follows:

> Philadelphia Police Sergeant John McGinley, assigned to the Advance Training Unit, testified that on October 17, 2014, at approximately 1:30 p.m., he performed his tour of duty in the 6300 North 21st Street area of Philadelphia, Pennsylvania. Officer McGinley stated that he first came in contact with [Appellant], Tracey Floyd, Sr., and his son, Tracey Floyd, Jr., when he was flagged down in his patrol car. He noted that he pulled over to speak to [Appellant] at which time [Appellant] informed him of the landlord/tenant dispute and that the person [Appellant] had the issue with was traveling eastbound on Chelten Avenue. Sergeant McGinley stated the person [Appellant] had the landlord/tenant dispute with was then stopped. He testified that he then called for backup because there were two vehicles stopped.

> On cross-examination by Defense Counsel Daniel Alva, representing [Appellant], Sergeant McGinley testified that while he could not recall precisely how [Appellant] flagged him down, it was by either standing on the sidewalk waving his hand or by getting his attention seated in his vehicle and gesturing out from the window. He further explained that he believed [Appellant] was alone in the vehicle but was uncertain. Officer McGinley testified there was a second vehicle which was occupied by the son, Tracey Floyd, Jr., and another male. He stated [Appellant] explained to him there was a previous landlord/tenant dispute at the location of 5826 Crittenden in which [Appellant] had called the police and the police investigated. Sergeant McGinley noted that the landlord /tenant dispute occurred in the 14th District where he was the patrol sergeant at the time. He then corroborated [Appellant's] information by verifying that officers did indeed respond to an incident at said location. Sergeant McGinley stated he was unaware of who requested police to respond to the landlord/tenant dispute.

> When questioned about Defense Exhibit 1 (D-1), . . . Sergeant McGinley testified that it was a complaint form prepared by Officer Czepiel for the Complainant, Tracey Floyd, Sr. at 4826 Crittenden Street and at 1:16 p.m. Sergeant McGinley stated [Appellant] flagged him down shortly after the

reported incident, though he could not recall the precise time. He explained the reason he called for backup was because there was another vehicle following behind [Appellant] with one male and female inside. Sergeant McGinley further explained that he requested for general backup which took approximately a minute to arrive. He noted that while he was waiting for backup, there was a verbal dispute between [Appellant] and the male and female in the second vehicle. Sergeant McGinley testified that two female officers arrived as his backup, Officers Martinsen and Kinniry. He stated he did not provide the officers with any instruction once they arrived. Instead, he attempted to ensure [Appellant] and the two individuals in the second vehicle remained separated because they were "yelling and screaming." Sergeant McGinley explained that he was the supervisor on the scene of the incident.

He further explained that if he gave any instruction to the two female officers it was to keep [Appellant] and the other two apart. Sergeant McGinley stated that [Appellant] was standing on the corner of 21st Street and Chelten Avenue and they spoke with thirty (30) and forty (40) feet between them. He testified that [Appellant] was not his complainant at the time of the incident because he was attempting to determine what had occurred and ensure that the individuals in the second vehicle were unarmed. Sergeant McGinley explained that after speaking with [Appellant], he patted down Tracey Floyd, Jr. to make sure it was safe for the other officers, himself, and [Appellant].

On cross-examination by Defense Counsel Jeremy Alva representing Tracey Floyd, Jr., Sergeant McGinley testified that once he separated [Appellant] and the other person from the second car, he believed that Tracey Floyd, Jr. was stepping out from a smaller vehicle with another male passenger. Sergeant McGinley stated Tracey Floyd, Jr. was eventually standing on the sidewalk near himself, [Appellant], and the other male. He explained that while everyone was pacing back and forth on the sidewalk[, h]e did not know if Tracey Floyd, Jr. ever walked away from [Appellant], his father, or did anything else besides pacing, in part because there was a lot of activity. Sergeant McGinley noted that once Tracey Floyd, Jr. was standing on the sidewalk, he was approximately five (5) to fifteen (15) feet away from [Appellant's] vehicle and he was "right next to it." He explained he could not recall whether Tracey Floyd, Jr. was on the driver's or the passenger's side. Sergeant McGinley also noted he did not recall if Tracey Floyd, Jr. ever went into the car and added, "I'm not saying he did not either."

Philadelphia Police Officer Judith Kinniry, assigned to the 35th District, testified that on October 17, 2014, at approximately 1:30 p.m., she performed her tour of duty in the 6300 North 21st Street area of Philadelphia. She explained that she was there because she and her partner, Officer Martinsen, were called to backup 14th District officers. Officer Kinniry further explained that when she arrived at the scene Sergeant

McGinley and another officer had stopped two vehicles. She testified that it was at the scene she came into contact with [Appellant] and his son, Tracey Floyd, Jr. Officer Kinniry stated that once she approached the scene Sergeant McGinley requested she obtain the identification of the males. She explained that Tracey Floyd, Jr. did not have identification on him so they brought him over to the patrol car to further identify him. Officer Kinniry remarked that Tracey Floyd, Jr. was frisked for safety and that a set of brass knuckles were recovered.

She testified that she had witnessed Tracey Floyd, Jr. going "in and out the rear of the vehicle," which was a Ford Expedition. She searched this area of the car where she observed Tracey Floyd, Jr. and saw from the window an open container of Colt 45 and retrieved it. Officer Kinniry stated the bottle was wrapped in a white t-shirt and when she pulled it out she felt something heavy and found a handgun wrapped inside. She explained that when she recovered the handgun, [Appellant], Tracey Floyd, Sr., was standing behind the vehicle and stated, "that is not mine. I didn't even know it was there." Officer Kinniry testified that he said these things without being asked. She said after recovering the handgun she continued her search of the car, went to the other side of the car, and recovered two knives. Officer Kinniry stated she then asked [Appellant] if there was any other weapons in the vehicle and [Appellant] replied, "there might be a gun in the trunk or the back hatch." She testified [Appellant] gave his permission for her to search the back hatch. She noted that once she went to the back of the car, there was a blue bag. "It looked like one of those bank bags with a zipper and lock." Officer Kinniry testified she recovered an unloaded .45 caliber Ruger from the bag and ammunition, six (6) nine (9) millimeter rounds, which was separated from the firearm.

On cross-examination by Defense Counsel Jeremy Alva, Officer Kinniry stated she could not recall how long it took her to arrive at the scene from the time she received the backup call. She explained that once she arrived her patrol car was facing the same way as the other vehicles. While she could not remember the first thing she witnessed at the scene, she did remember seeing Tracey Floyd, Jr. stepping out from the rear of the vehicle. Officer Kinniry stated the passenger's side was on the same side as the sidewalk and that it was a one lane street which had parking on both sides. She noted the only non-police vehicles present were [Appellant's] and Tracey Floyd, Jr.'s. Officer Kinniry explained [Appellant's] vehicles were a Ford Expedition and a smaller car which were parked on the same side of the sidewalk. She noted it was not until she stepped out of her patrol car that she saw Tracey Floyd, Jr. and then Sergeant McGinley told her to retrieve their identifications. She further noted she did not know what Tracey Floyd, Jr. was reaching for or what he was doing but witnessed him reaching into the vehicle while standing on the sidewalk.

Officer Kinniry testified she did not inform her partner of what she had witnessed. After seeing Tracey Floyd, Jr. reach into the rear of the vehicle, she took him to the back of her patrol car. She stated that she recovered the brass knuckles from a search of Tracey Floyd, Jr.'s person that occurred prior to his placement into the patrol car. When presented with her prior testimony from the preliminary hearing stating that [Appellant] was the person who did not have identification, was frisked and possessed the brass knuckles, Officer Kinniry clarified that she meant Tracey Floyd, Jr.

She noted the white t-shirt, marked as Defense Exhibit 3 (D-3), recovered from the back seat of the Ford Expedition, was the only t-shirt in question and that the alcohol was not recovered. Officer Kinniry stated she believed there were five (5) officers at the scene of the incident. When questioned why she and her fellow officers chose to frisk Tracey Floyd, Jr. and place him in the patrol car when they merely wanted to retrieve identification, she stated they were further investigating him and that he was fine with it. When further questioned why Tracey Floyd, Jr. could not remain standing on the corner with five (5) officers watching him while his name was checked, Officer Kinniry replied it was because they decided not to let him remain standing. Officer Kinniry further stated no police officer noticed bulges on Tracey Floyd, Jr.'s person.

On cross-examination by Defense Counsel Daniel Alva, Officer Kinniry testified she has six (6) years of experience on the force and that one of the first things typically done upon arriving at a scene is to determine "who's friend and who's foe." She stated when she arrived at the scene she was not informed that [Appellant] and his son, Tracey Floyd, Jr. were complainants and not the focus of the investigation. Officer Kinniry explained that she arrived at the scene without any preexisting information pertaining to who was the focus of the investigation.

When questioned about whether Sergeant McGinley instructed her to retrieve identification in light of his testimony stating that he did not instruct her to do so, Officer Kinniry affirmed he did. When questioned further about Sergeant McGinley's instruction, she replied, "I don't recall exactly what he said but we knew what we needed to do was get ID's from the males involved." In response to being asked if her individual instinct led to her attempting to obtain identification instead of being directed to, Officer Kinniry replied, "we asked him for ID. He did not have it, no. So we asked him. We took him over to the car like we generally do to look up information." She noted she believed [Appellant] was still with the other officers when Tracey Floyd, Jr. was placed in the patrol car. Officer Kinniry stated that while Tracey Floyd, Jr. was not handcuffed prior to being placed in the patrol car, he could not voluntarily get out. She stated that at no point did she find out [Appellant] was the complainant.

Officer Kinniry testified she first engaged with [Appellant] once she found the gun in the rear of the vehicle wrapped in a t-shirt when he said, "that is not mine." She noted that after recovering the knives and the handgun, the officers did not take him into custody as an arrest and instead took him in as an investigation, though he was not free to leave. Officer Kinniry stated [Appellant] believed he had a Delaware permit to carry firearms; the permit was discovered to be expired. She further stated that while at the time [Appellant] was taken in for investigation, she had asked [Appellant] if there were any other weapons in the car to aid in the investigation.

On redirect-examination, Officer Kinniry testified [Appellant] was not handcuffed when asked if there were any other weapons in the car and had not been told he was under arrest. She noted [Appellant] offered to retrieve the handgun, but she said she would get it instead.

Philadelphia Police Officer Martinsen, assigned to the 35th District, testified that on October 17, 2014, at approximately 1:30 p.m., she performed her tour of duty in the 6300 North 21st Street area of Philadelphia when she came into contact with [Appellant]. She stated that while Tracey Floyd Jr. was sitting in her patrol car, after Officer Kinniry found the handgun wrapped in the t-shirt, he said, "that's mine." She had not asked Tracey Floyd, Jr. any questions prior to him stating the handgun was his, nor was she aware of the handgun before he made the comment, which made her turn and look at Officer Kinniry who was holding the handgun.

On cross-examination by Defense Counsel Jeremy Alva, Officer Martinsen testified that Tracey Floyd, Jr. was in the patrol car in order to check his identification.

[Appellant] testified that he called the police to his house regarding the landlord/tenant dispute. He testified that once he left with the police from the area, a male squatter at his house driving a burgundy Trail Blazer SUV told him to pull over, and a chase shortly ensued. [Appellant] noted the chase lasted about five (5) minutes. He further noted that he was driving his vehicle alone and his two sons were driving behind him in a Nissan Maxima. He testified he saw the sergeant in his patrol car as he was attempting to get away from the male squatter. [Appellant] said once he saw Sergeant McGinley he rolled down his window and notified him that someone was following him and asked whether he received the call pertaining to the 5826 Crittenden Street landlord/tenant dispute. [Appellant] noted the sergeant then backed up his car and cut off the squatter's vehicle, preventing him from proceeding. He stated once the sergeant pulled the other car over, he told them to get out of the vehicle and then started to speak to them.

[Appellant] testified more police officers arrived, including two (2) African-Americans and two (2) female officers. He

explained he only heard the patrol car of the female officers arrive, and did not see either of them until one seized his son, Tracey Floyd, Jr. [Appellant] testified he told Tracey Floyd, Jr. to remove the car keys from the ignition since he was speaking to the officers and that his son was in the front on the passenger's side, not the rear of the car.

On cross-examination, [Appellant] testified the individuals the sergeant pulled over were yelling. He stated Tracey Floyd, Jr. was not going in and out of the car but just reached in to grab the key after he asked him to turn the car off. He also affirmed the presence of the handgun wrapped in a t-shirt and that he told Officer Martinsen that it was not his. [Appellant] testified that after Officer Kinniry placed his son in the patrol car, she opened the driver's door and starting searching the middle part of the car. He stated it was once she started searching the middle part of the car that he said, "if you're going to search my car, I'm going to let you know now I got two pistols in there that I went to the range and I didn't take them out." [Appellant] noted the handguns were not loaded, and that one was in a blue bag which was a lock. He stated, "I keep it in a safe and when I take it to the range, I put in in this case with a key and lock and I take the key with me." He testified the other gun was wrapped in a t-shirt or towel.

On redirect-examination, [Appellant] testified he was going to the range from his house before the chase occurred. He explained he was going to Philadelphia to take pictures to try to evict the squatters from his house because he had received his landlord/tenant license.

Trial Court Opinion, 6/30/16, at 2-11 (footnotes and internal record citations omitted). Finding Appellant's testimony incredible, the trial court denied the suppression motion. The case proceeded to a bench trial, at which Appellant was found guilty of carrying a firearm without a license and carrying a firearm on the streets of Philadelphia. On November 25, 2015, the trial court sentenced Appellant to four years' probation for carrying a firearm without a license and a concurrent one year of probation for carrying a firearm on the streets of Philadelphia.

On appeal, Appellant raises only a single issue for our review. He argues that "the trial court err[ed] in denying [his] motion to suppress any and all evidence used against him at trial[.]" Appellant's Brief at 6. In this regard, he argues only that the "evidence put forth by the Commonwealth to support [the] search of [his] vehicle" was not "credible." *Id.* at 10. Appellant claims that "[t]he testimony of Officer [] Kinniry at the suppression hearing was incredible and insufficient as a matter of law to meet the standards required to establish reasonable suspicion or probable cause." *Id.* at 10-11. Specifically, Appellant argues that Officer Kinniry's testimony that she observed in plain view an open bottle of alcohol was merely an "uncorroborated allegation." *Id.* In essence, Appellant asks us to credit his version of the facts, *i.e.*, no open container of alcohol was present in his vehicle, over Officer Kinniry's.

In reviewing appeals from an order denying suppression, our standard of review is limited to determining

> whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Griffin*, 116 A.3d 1139, 1142 (Pa. Super. 2015). Our scope of review is limited to the evidence presented at the suppression hearing. *In the interest of L.J.*, 79 A.3d 1073, 1088-89 (Pa. 2013).

- 8 -

Here, we must reject Appellant's sole claim on appeal as he challenges only the trial court's weight of the evidence and credibility determinations. As we noted above, this Court may not re-weigh the evidence or substitute its judgment for that of the trial court sitting as the fact-finder. **See Griffin**, **supra**; **see also Commonwealth v. Queen**, 639 A.2d 443, 445 (Pa. 1994) (noting that an appellate court may "not substitute [its] credibility determinations for that of the suppression court."). Thus, it is settled that we may not disturb a trial court's credibility determinations. **See Commonwealth v. Chine**, 40 A.3d 1239, 1244 (Pa. Super. 2012), **appeal denied**, 63 A.3d 773 (Pa. 2013). Accordingly, we reject Appellant's argument for want of merit.[2]

Judgment of sentence affirmed. Appellant's motion to strike denied.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2017

_____

[2] Appellant filed a motion to preclude and/or strike Appellee's brief as untimely failed and for failure to serve. In light of our disposition, the motion is denied.