**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD D. YOVICHIN | : | |
| | : | |
| Appellant | : | No. 868 WDA 2019 |

Appeal from the May 29, 2019 Judgment of Sentence,
in the Court of Common Pleas of McKean County,
Criminal Division at No(s):  CP-42-CR-0000087-2018.

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 8, 2020**

Richard D. Yovichin appeals from the judgment of sentence, imposing 18 months of county-supervised probation, following convictions for recklessly endangering another person and propulsion of missiles toward a roadway.[1] Because the Commonwealth's evidence was insufficient to prove either charge beyond a reasonable doubt, we overturn both convictions.

Mr. Yovichin has resided in a home on South Avenue, in a residential portion of Bradford Township, for over 20 years.  The driveway of his home intersects the roadway perpendicularly.  His next-door neighbor is Broderick P. Newman.  The Newmans moved into their home on December 7, 2016, and their relationship with Mr. Yovichin, at best, has been strained.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2705 and 2707(b).

Mr. Newman and his wife dialed 9-1-1 to complain about Mr. Yovichin "dozens of times" in 2017. N.T., 3/26/19, at 37. The Newmans and their attorneys also sent Mr. Yovichin two letters — one in February of 2017 and one in the middle of December of 2017 — warning Mr. Yovichin not to trespass on the Newmans' property. Eventually, the dispute led to both men being arrested, but only Mr. Yovichin's conduct is at issue in this appeal.

On December 20, 2017, shortly after noon, Mr. Newman looked out his second-story window and witnessed Mr. Yovichin walk to the middle of his own driveway with a rifle in his left hand. Mr. Yovichin faced toward the direction of South Avenue and discharged the rifle. Mr. Newman testified that he heard the gun go off twice and that he saw Mr. Yovichin bend down to pick something up. Mr. Yovichin could not determine what Mr. Yovichin was retrieving off the ground.

Critically, Mr. Newman did not testify about the result of the shooting, such as a bullet striking anything or anyone. He also did not testify that live rounds had, in fact, departed Mr. Yovichin's gun.

David Durolek, who lives directly across the street from Mr. Yovichin and was also home at the time, testified that he was in his living room, wrapping Christmas presents, and listening to carols. Mr. Durolek did not hear gun shots and only became aware of this event when Mr. Newman called him to ask whether Mr. Durolek's security camera had recorded the incident. It had, but there was no audio. The Commonwealth admitted the video as evidence and played it for the jury.

- 2 -

The video showed Mr. Yovichin at a distance in his driveway with some type of rifle in his hand. He briefly raised the barrel of the gun to about the height of his chest, pumped the barrel, and then lowered the gun. Mr. Yovichin never aimed at anything in particular, nor did he visibly recoil from the gun going off. Moreover, nothing in the video showed any visible damage from a bullet, nor did the video record anything exiting the gun, e.g., a flash, or any smoke emanating from the barrel. Mr. Yovichin turned around and touched the ground, apparently picking something up off the ground, and then he entered his house.

Finally, the Commonwealth called the investigating officer to testify. He said that he spoke with Mr. Newman and Mr. Durolek on the day of the incident. However, the police did not recover the rifle or any bullets near, in, or upon the roadway or in any of the properties to the east of South Avenue. In fact, there was no testimony that any search for the allegedly fired ammunition occurred, and the Commonwealth never identified what type of firearm Mr. Yovichin carried that afternoon.

Based on the testimony of Mr. Newman and the video-surveillance, the police arrested Mr. Yovichin and charged him with recklessly endangering another person, disorderly conduct—creating a hazard or offensive condition,[2] and propulsion of missiles onto roadways. A jury convicted Mr. Yovichin of the first and third charges but acquitted him of the second. The trial court

---

[2] 18 Pa.C.S.A. § 5503(a)(4).

sentenced Mr. Yovichin to 18 months' probation on both convictions, running concurrently.

Mr. Yovichin filed post-trial motions for acquittal and, in the alternative, a new trial. The trial court denied relief, and this timely appeal followed.

On appeal, Mr. Yovichin raises the following issues, which we have rephrased for clarity:

> 1. Whether the evidence sufficiently sustains the jury's conviction for the offense of propulsion of missiles toward a roadway of the Commonwealth?
>
> 2. Whether the evidence sufficiently sustains the jury's conviction for the offense of recklessly endangering another person?

*See* Yovichin's Brief at 8. We discuss each issue in turn.[3]

*1.     Sufficiency of Evidence — Propulsion of Missiles*

Mr. Yovichin first claims that, as a matter of law, the trial court should have reversed his conviction for propelling missiles toward a roadway of the Commonwealth. He asserts the jury wrongfully convicted him, because "there was no evidence     . . . any object left [his] gun on December 20, 2017." *Id.* at 23. He argues the security video from Mr. Durolek's house "does not have audio . . . does not depict a projectile leaving the barrel of the gun in [his] hands, nor . . . [does it] appear to show the gun being fired." *Id.* at 24. Thus, Mr. Yovichin suggests he "may have been shooting blank shells." He therefore

_____

[3] Mr. Yovichin raises three other issues in his brief, but they are not relevant to our disposition of the case.

- 4 -

contends the Commonwealth failed to prove this crime beyond a reasonable doubt.

The Commonwealth disagrees. It argues that the video evidence, when combined with Mr. Newman's testimony that he heard the gun fire "is more than enough circumstantial evidence for a jury to find that the shot traveled across the roadway." Commonwealth's Brief at 16. Absent from this theory, however, is any indication of what evidence the Commonwealth submitted to prove the implied premise of its argument — namely, that a missile actually shot from Mr. Yovichin's gun in the first place.

In reviewing a sufficiency-of-the-evidence claim, our standard of review is *de novo*; we must determine whether the evidence permits the jury to find every criminal element beyond a reasonable doubt.[4] *See Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010) (*en banc*). "In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence." *Id.* While "passing on the credibility of witnesses and the weight of the evidence, [the jury was] free to believe all, part, or none of the evidence." *Id.* "It is not within this Court's authority to re-weigh the evidence presented and substitute our own judgment over that

---

[4] "Reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs." Pa.S.S.J.I. (Crim.), §7.01.

of the fact finder." **Commonwealth v. Shaw**, 203 A.3d 281, 284 (Pa. Super. 2019), *appeal denied*, 215 A.3d 964 (Pa. 2019).

Even so, "[w]here the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and laws of nature, then the evidence is insufficient as a matter of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). Also, in **Commonwealth v. Griffin**, 116 A.3d 1139, 1143 (Pa. Super. 2015), this Court over turned a factual finding where the indisputable visual evidence that a video camera had recorded contradicted the factual finding.

In Pennsylvania, it is illegal to intentionally propel a solid object on or toward any roadway of the Commonwealth. "Whoever intentionally throws, shoots, drops, or causes to be propelled any solid object, from . . . any . . . location adjacent to . . . a roadway, onto or toward said roadway shall be guilty of a misdemeanor of the second degree." 18 Pa.C.S.A. § 2707(b).

In the case at bar, the Commonwealth provided evidence from which the jury could reasonably find that most, but not all, of those elements existed beyond a reasonable doubt. The video clearly shows Mr. Yovichin holding a firearm while standing in his driveway and facing toward South Avenue. He pumped the rifle once, apparently to clear a cartridge.[5]

---

[5] "A pump-action or slide-action firearm is one in which a forend can be moved forward and backward in order to eject a spent round of ammunition and to chamber a fresh one . . . Once fired, the forend is slid rearward by hand and the expended cartridge ejected. It is then reloaded by manually moving the

However, as Mr. Yovichin argues, none of this proves that he fired live ammunition beyond a reasonable doubt.  The video does not show any objects departing the barrel of his gun, and the police never recovered any evidence supporting an inference that any solid object departed his gun, such as a bullet on or beyond the roadway or damage to a nearby house or car.  The video also shows that there was no flash or recoil from the firing of the gun, which logic and human experience dictates would have occurred had Mr. Yovichin actually fired bullets from the firearm.  From the video evidence alone, this guilty verdict "is in contravention to human experience and laws of nature, [and therefore" the evidence is insufficient as a matter of law." **Widmer**, 744 at 751.  As in **Griffin**, **supra**, the indisputable visual evidence from the surveillance video disproves the jury finding that Mr. Yovichin discharged a projectile from his gun and renders that finding of fact clearly erroneous.

Moreover, as for the fact that Mr. Yovichin turned around and bent over, even assuming that the jury reasonably inferred he was retrieving shell casings, the Commonwealth failed to prove that those casings were from live rounds, as opposed to snap caps.  Indeed, the only person in this case who truly **knows** what he fired that day is Mr. Yovichin himself, and, under the

---

forend to the front."  WIKIPEDIA: THE FREE ENCYCLOPEDIA, entry of "Pump action", available at https://en.wikipedia.org/wiki/Pump_action (last visited 3/22/20).

Fifth Amendment to the Constitution of the United States,[6] the jury cannot legally infer from his refusal to testify that he fired live rounds.  Nor may we.

As for Mr. Durolek's home-security camera, while it is reasonable to infer that the camera would not have the capability of capturing bullets flying out of a gun, the Commonwealth cannot simply rely upon that fact to have the jury guess that something probably, or even very likely, left Mr. Yovichin's gun.  These inferences are constitutionally insufficient to convict, because there is no direct or circumstantial evidence of record from which a reasonable person may conclude, beyond reasonable doubt, that Mr. Yovichin fired live rounds that December afternoon.

Investigators recovered no bullets near, on, or across South Avenue. Nor did anyone testify that a bullet or bullets had struck anyone or anything. If the Commonwealth had offered such testimony, the jury could have circumstantially inferred from it, beyond a reasonable doubt, that Mr. Yovichin had, in fact, fired bullets.  That did not occur.

Additionally, logic dictates that, for the same reason that Mr. Durolek's security camera could not record bullets leaving Mr. Yovichin's gun, Mr. Newman, as a matter of physics and human biology, could not have "seen" them leaving the gun either.  Thus, even when viewed in the light most favorable to the Commonwealth, Mr. Newman's testimony of his observations from the upstairs window only proves *that* Mr. Yovichin fired the gun.  It does

---

[6] The Fifth Amendment provides, in relevant part, "No person shall . . . compelled in any criminal case to be a witness against himself . . . ."

not prove whether Mr. Yovichin fired anything *from* the gun. More critically, the video evidence disproves Mr. Newman's testimony. As we have explained, the recording shows that Mr. Yovichin, at most, practiced pumping, aiming, and discharging a cycle from his gun without actually firing it. Thus, when the Commonwealth introduced the home-security video into evidence it actually demonstrated that Mr. Yovichin was innocent.

Were this a civil matter, where the Commonwealth could prove its case by a preponderance of the evidence, we might well find its evidence legally sufficient. But this is not a civil trial.

Here, Mr. Yovichin has a constitutional right to force the Commonwealth to prove every element of the charged offenses beyond a reasonable doubt. "No man should be deprived of his life under the forms of the law unless the jurors who try him are able, upon their consciences, to say that the evidence before them is sufficient to show beyond a reasonable doubt the existence of *every fact* necessary to constitute the crime[s] charged." *In re Winship*, 397 U.S. 358, 363 (1970) (emphasis added) (some punctuation omitted). When someone stands accused of a crime, he "would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence in a civil case." *Id.*

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." *Id.* Thus, when the "evidence offered

to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." ***Commonwealth v. Sanchez***, 36 A.3d 24, 40 (Pa 2011) (quoting ***Commonwealth v. Farquharson***, 354 A.2d 545, 550 (Pa. 1976)). This is a "fundamental principle" of criminal law. ***Farquharson***, 354 A.2d at 550.

In this case, unreliability and assumption abound. Nothing of record proves or creates any inference that a physical missile left Mr. Yovichin's gun, besides the jury's mere speculation that one likely did. In fact, as we explained above, the video evidence ***disproves*** it. Without proof beyond a reasonable doubt — like a bullet hole in some object or building, recovered ammunition matching the fired weapon, and/or someone hearing a bullet pass nearby — the Commonwealth produced insufficient evidence, as matter of law, to make a *prima facie* case that Mr. Yovichin shot a "solid object." 18 Pa.C.S.A. § 2707(b). Additionally, we note that the police who investigated this matter and arrested Mr. Yovichin never obtained a warrant to seize the rifle allegedly used to perpetrate this crime. Therefore, the Commonwealth offered no proof that a bullet had recently departed Mr. Yovichin's gun.

Thus, there was insufficient evidence to sustain a guilty verdict on the charge of propulsion of missiles onto or toward a roadway against Mr. Yovichin. His conviction on this charge cannot stand.

*2.     Sufficiency of Evidence — Recklessly Endangering Another*

Mr. Yovichin also challenges the sufficiency of the evidence upon which the jury convicted him of recklessly endangering another person.

For much the same reason that the Commonwealth made no *prima facie* case on the charge of propulsion of missiles, it likewise failed, as a matter of law, to convict Mr. Yovichin on the charge of recklessly endangering another person.[7] Without proof beyond a reasonable doubt that bullets exited Mr. Yovichin's rifle, there is no evidence of record from which the jury could reasonably conclude that Mr. Yovichin actually risked causing death or serious bodily injury to another person.

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "Serious bodily injury" is harm to an individual "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

To convict on the charge of recklessly endangering another person the Commonwealth must prove that the defendant created a clear and present danger — *i.e.*, the existence of an actual, current ability to harm another individual. **See Commonwealth v. Reynolds**, 835 A.2d 720, 727-28 (Pa. Super. 2003). This Court has held that the mere act of discharging a firearm does not constitute recklessly endangering another person. **Commonwealth**

---

[7] Our scope and standard of review are unchanged from the previous issue, and we incorporate them here by reference.

*v. Kamenar*, 516 A.2d 770 (Pa. Super. 1986) (finding evidence insufficient to support conviction where defendant fired a single gunshot away from other people and toward a wooded hillside behind his home).  However, discharging a firearm near a person is sufficient to convict.  *See*, *e.g.*, *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009).

Mr. Yovichin relies on *Commonwealth v. Smith*, 447 A.2d 282 (Pa. Super. 1982), for the proposition that the Commonwealth did not prove that he put anyone in jeopardy of serious bodily harm, because there is no evidence that he discharged a bullet, much less discharged it at someone else. In *Smith*, Douglas Forry was driving his car within 25 yards of Smith's home. Smith was kneeling on his front porch with a rifle in his hands.  Forry, who was focused on the private lane ahead, heard Smith fire a shot.  But he did not see which direction Smith was pointing his rifle when the gun fired.  Forry also never heard a bullet whiz past him or land anywhere.

The jury convicted Smith of recklessly endangering Forry.  On appeal, this Court reversed.  Because "there was no evidence that the rifle was fired *at* Douglas Forry," we concluded that it was equally "plausible . . . that the rifle was fired into the air."  *Smith*, 447 A.2d at 284 (emphasis in original). The Commonwealth therefore produced no "evidence from which a jury could conclude that Douglas Forry at any time was placed in danger of death or serious bodily injury."  *Id.*

In this appeal, the Commonwealth responds that Mr. Yovichin's reliance upon **Smith** is misplaced. Instead, the Commonwealth believes this case is analogous to **Shaw**, **supra**.

In **Shaw**, a woman had just driven up to her townhouse and parked her car around midnight, in the City of Philadelphia. From behind the wheel, she saw Shaw sitting on his front porch, talking loudly to himself with his arm up in the air. As she exited the car, the woman feared for her safety and "ducked behind the driver's side of her vehicle . . . [S]he then heard a gunshot and observed a small flash of light emerge from around the hand area of Shaw's extended arm. After the gunshot, she heard something fall straight down or bounce off another object." **Shaw**, 203 A.3d at 282.

The jury convicted Shaw of recklessly endangering the woman, he appealed, and we affirmed. This Court explained "Shaw fired a handgun into his porch ceiling with a witness mere feet away . . . Shaw's actions recklessly endangered another person, because it is possible that the shot could have ricocheted off the porch ceiling toward [the woman] as she hid behind her car, creating a risk of serious bodily harm." **Id.** at 286. Although Shaw fired his weapon in the air, he "was in close vicinity to both [the hiding woman] and other people who lived in nearby row homes. It is feasible that **the projectile** could have struck [the hiding woman] or another person." **Id.** at 286–87 (emphasis added).

Here, unlike **Shaw**, where the woman saw the gun flash and heard the bullet strike something, there is no evidence of a flash or that a bullet had hit

- 13 -

anything. So, while in **Shaw** the jury could credit the woman's testimony and find beyond a reasonable doubt that Shaw had discharged a projectile in a residential neighborhood, the jury in this case — for all the reasons explained above — could not draw such an inference beyond a reasonable doubt.

This matter is more analogous to **Smith** than **Shaw**. Like **Smith**, the evidence, besides not showing that anything left Mr. Yovichin's firearm, does not prove Mr. Yovichin fired his gun at a specific victim or in close proximity to others. The only person who was even aware of Mr. Yovichin's actions as they occurred was Mr. Newman. Like the witness in **Smith** who could not offer any testimony about hearing the bullet pass him or where it landed, Mr. Newman also offered no testimony regarding a bullet's trajectory or where it may have landed, even assuming Mr. Yovichin actually fired a bullet. And simply firing a live round from a gun, without the potential for serious bodily injury, is not sufficient to prove the crime of recklessly endangering another person. **See Kamenar**, **supra**.

Moreover, Mr. Newman testified he was on the second floor of his house which was south of Mr. Yovichin. According to the video and Mr. Newman's testimony, Mr. Yovichin faced east, *i.e.*, not in the direction of Mr. Newman's house, when Mr. Newman heard the gun fire. Thus, Mr. Newman was in even **less danger** than the witness in **Smith**, who was, at least, in the general direction that Smith aimed his rifle.

Granted, under **Shaw**, the Commonwealth does not have to prove that a specific victim was placed at risk of serious-bodily injury when a gun is

discharged in a residential setting.  We reasoned in **Shaw** that the bullet that the witness heard could have penetrated a nearby building and injured an unseen occupant.  But, in **Shaw** whether a bullet had actually exited the shooter's weapon was not in serious doubt.  Here, the fact that Mr. Yovichin fired his weapon in a residential area, without proof beyond a reasonable doubt that a bullet left his gun, fails to establish that he placed any of his neighbors in a present risk of serious-bodily injury.  The Commonwealth has not offered sufficient evidence to prove that Mr. Yovichin actually fired bullets.

Without such evidence, the Commonwealth cannot rely upon **Shaw** to support this conviction.  Mr. Yovichin's second conviction for recklessly endangering another person also cannot stand, because the Commonwealth needed to prove the discharge of a bullet beyond a reasonable doubt that placed someone in present risk of harm.  **See Winship**, **supra**.

Judgment of sentence vacated.  Order denying post-sentence motion for judgment of acquittal on both counts reversed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/8/2020

- 15 -