**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS A. KRATZER | : | |
| | : | |
| Appellant | : | No. 698 MDA 2020 |

Appeal from the Judgment of Sentence Entered February 14, 2020,
in the Court of Common Pleas of Snyder County,
Criminal Division at No(s): CP-55-CR-0000392-2018.

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 21, 2021**

Douglas A Kratzer appeals from the judgment of sentence imposed following his conviction of two counts of driving under the influence ("DUI").[1] After careful consideration, we affirm.

In the early morning hours of May 28, 2018, Kratzer, then aged seventy-two, drove through a police sobriety checkpoint. Trooper Jordan Judson initiated contact with Kratzer and observed that his eyes were bloodshot and that he was wearing a wristband. Kratzer admitted to the trooper that he had a few drinks prior to driving. When the trooper asked Kratzer to exit his vehicle, the trooper detected an odor of alcohol emanating from Kratzer's person. At the trooper's request, Krazter performed two field sobriety tests

---

[1] *See* 75 Pa.C.S.A. § 3802(a)(1), (2).

("FSTs"); namely, the walk-and-turn test and the one-leg-stand test. Kratzer told the trooper that he had a hip issue, but he did not explain the nature or extent of the issue. When Kratzer performed the FSTs, Trooper Judson observed several signs or clues of impairment. He thereafter arrested Kratzer on suspicion of DUI.

Upon receiving his *Miranda* and *O'Connell* warnings,[2] Krazter consented to the chemical testing of his blood which revealed that his blood alcohol content ("BAC") was .088%. Kratzer was charged with two counts of DUI (general impairment and BAC greater than .08% but less than .10%). Kratzer filed an omnibus pretrial motion to suppress the BAC results on the basis that, *inter alia*, the trooper lacked probable cause to suspect that he was sufficiently impaired, and the FST results were inadmissible.

Following a suppression hearing, the trial court denied suppression and the matter immediately proceeded to a non-jury trial. The trial court found Krazter guilty of both counts of DUI. On February 14, 2019, the trial court imposed an aggregate sentence of six months of probation, plus fines and costs. Kratzer filed a post-sentence motion challenging the weight of the

_____

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966) (a *Miranda* warning informs a suspect that he has the right to remain silent, that anything he says can and will be used against him, that he has the right to speak with an attorney, and that if he cannot afford an attorney one will be appointed to represent him); and *Commonwealth of Pennsylvania, DOT v. O'Connell*, 555 A.2d 873 (Pa. 1989) (an *O'Connell* warning informs a motorist that his driving privileges will be suspended for one year if he refuses chemical testing).

- 2 -

evidence, which the trial court denied.  Kratzer filed a timely notice of appeal,

and both he and the trial court complied with Pa.R.A.P. 1925.

Krazter raises the following issues for our review.

1. Did the trial court err in denying Kratzer's omnibus pre-trial motion as Trooper Judson lacked sufficient probable cause to arrest him where the facts and circumstances within his knowledge at the time of arrest were not sufficient to warrant a person of reasonable caution to believe Kratzer was incapable of safely operating a motor vehicle or that his blood alcohol content was above a .08%?

2. Did the trial court err in finding Kratzer guilty of DUI: general impairment pursuant to 75 Pa.C.S.A. § 3802(a)(1), because the Commonwealth was unable to link any observations of impaired driving to Kratzer and the evidence did not establish that his mental and physical faculties were impaired such that he could not safely operate a motor vehicle?

Kratzer's Brief at 1 (unnecessary capitalization omitted).

In his first issue, Kratzer challenges the trial court's denial of his motion

to suppress the BAC results.  In reviewing an appeal from an order denying

suppression, our standard of review is limited to determining:

whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct.  When reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  When the record supports the findings of the [trial] court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Griffin***, 116 A.3d 1139, 1142 (Pa. Super. 2015).  Our

scope of review is limited to the evidence presented at the suppression

hearing.  ***In re interests of L.J.***, 79 A.3d 1073, 1088-89 (Pa. 2013).

- 3 -

The Pennsylvania Supreme Court has explained the following with regard to sobriety checkpoints:

> Although the stopping of a motor vehicle at a sobriety checkpoint constitutes a seizure for constitutional purposes, such checkpoint stops are not *per se* unreasonable, and hence are not *per se* unconstitutional under either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. . . . [T]he United States Supreme Court concluded that sobriety checkpoints do not offend the Fourth Amendment because they are a reasonable means of advancing a vital public interest, involving only a modest intrusion on the privacy and liberty of motorists. Similarly, we have held that systematic, non-discriminatory, non-arbitrary checkpoints do not offend the Pennsylvania Constitution.

***Commonwealth v. Worthy***, 957 A.2d 720, 724 (Pa. 2008) (internal citations omitted).

To be constitutionally valid, a warrantless arrest must be supported by probable cause. ***Commonwealth v. Evans***, 685 A.2d 535, 537 (Pa. 1996). In the case of a DUI, a police officer has probable cause to make an arrest where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. ***Commonwealth v. Hilliar***, 943 A.2d 984, 994 (Pa. Super. 2008). An officer must determine whether probable cause exists to justify a warrantless arrest using the "totality of the circumstances." ***Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*) (citation omitted). Thus, "a police officer may utilize his experience and personal observations to render an opinion as to whether a person is intoxicated." *Id*. (citation omitted); ***see also Commonwealth v.***

*Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007) (noting that trained police officers may draw commonsensical inferences from the facts).

Importantly, "probable cause does not involve certainties, but rather the 'factual and practical considerations of everyday life on which reasonable and prudent [persons] act.'" *Williams*, 941 A.2d at 27 (citation omitted). While FSTs can be helpful for a police officer when determining whether probable cause exists for a DUI arrest, "reasonable grounds to arrest [for suspicion of DUI] does not require the failure of [FSTs]." *Commonwealth v. Slonaker*, 795 A.2d 397, 402 (Pa. Super. 2002) (citation and footnote omitted). Moreover, "[p]robable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference." *Commonwealth v. Quiles*, 619 A.2d 291, 298 (Pa. Super. 1993) (*en banc*) (citations omitted); *see also Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (holding that probable cause is not a *prima facie* showing of criminal activity); *Commonwealth v. Moss*, 543 A.2d 514, 518 (Pa. 1988) (noting that the fact that other inferences could be drawn does not demonstrate that the inference that was drawn by police was unreasonable).

In the instant matter, Kratzer argues that Trooper Judson did not have sufficient probable cause to arrest him on suspicion of DUI. Kratzer maintains that, under the totality of the circumstances, the trooper could not have formed a reasonable probability that Kratzer was under the influence of alcohol such that it impaired his ability to drive safely or that his BAC was at

least .08%. In making this argument, Kratzer evaluates, in isolation, certain factors supporting Trooper Judson's probable cause determination. He insists that bloodshot eyes and an odor of alcohol do not necessarily indicate alcohol impairment or a BAC over .08%. Krazter posits that while some individuals may exhibit bloodshot eyes after one drink, other may not exhibit bloodshot eyes until several drinks are consumed. Similarly, Kratzer argues that some individuals may emit an odor of alcohol with a low BAC, whereas others may not present an odor of alcohol until reaching a much higher BAC. Kratzer maintains that the fact he was wearing a wristband is of no consequence and bears no weight in this matter.[3]

Krazter points out that, even though Trooper Judson observed two impairment clues when Kratzer performed the walk-and-turn test, the trooper did not make the decision to arrest Kratzer for DUI at that point, but considered the clues as part of the totality of the circumstances. Kratzer also points out that, even though Trooper Judson observed three clues of impairment when Kratzer performed the one-leg-stand test, the trooper conceded that it could not be confirmed whether Kratzer was having issues due to his age or something else.

---

[3] We note, with disapproval, that in making his suppression arguments, Krazter points to information not included in the suppression record. As we may only review the suppression record in addressing Kratzer's suppression challenge, we do not consider any information not contained therein. *See In re interests of L.J.*, 79 A.3d at 1088-89.

Krazter maintains that Pennsylvania is not a zero-tolerance state, and that it was lawful for him to drink and drive so long as he was not impaired above the legal limit.[4]  While Krazter acknowledges that the trial court found that Trooper Judson had probable cause to arrest Kratzer on suspicion of DUI based on his bloodshot eyes, odor of alcohol, admission of drinking, wristband, and the trooper's training and experience, Kratzer claims that "there is nothing trustworthy and reliable about the information Trooper Judson took into account with Kratzer's arrest."  Kratzer's Brief at 30-31.  Kratzer further argues that "[f]actors such as bloodshot eyes, odor of alcohol and a wristband, which only confirm that alcohol may have been drank, cannot be suggestive of criminal activity."  *Id*. at 33. According to Kratzer, no weight should be afforded to his performance on the FSTs due to his age.  Finally, Kratzer claims that the opinion of Trooper Judson was not reasonable based on his training

_____

[4] In making this argument, Krazter relies on **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), wherein our Supreme Court held that police officers may not infer criminal activity merely from an individual's possession of a concealed firearm in public, since a firearm may lawfully be carried and, alone, is not suggestive of criminal activity.  The **Hicks** Court further explained that, while the possession of a firearm "certainly can be suspicious," it is but one factor to be considered under the totality of the circumstances presented.  **Id**. at 939-40.  Importantly, **Hicks** did not involve a probable cause determination for suspected DUI.  Moreover, unlike in **Hicks**, Trooper Judson's probable cause determination was not based a single factor (*i.e.*, that Krazter admitted he had been drinking before driving through the DUI checkpoint).  Instead, in the instant matter, the trooper's probable cause determination was based on several factors indicating impairment.  Thus, we find **Hicks** to be factually and legally distinguishable.

and experience as a police officer as well as the facts known to him at the time of the arrest.[5]

The trial court determined that, based on the totality of the circumstances presented, Trooper Judson had sufficient probable cause to arrest Krazter on suspicion of DUI. The trial court reasoned:

> In this case the arresting officer had probable cause to arrest [Kratzer] on suspicion of a DUI offense because: (1) [Kratzer] had an odor of alcohol about him; (2) his eyes were bloodshot; (3) he was wearing a wristband, suggestive of his having left a location where alcohol was served; (4) he admitted to drinking alcohol before driving his vehicle; (5) he failed the "walk-and[-]turn" and "one[-]leg[-]stand" field sobriety tests; (6) the officer had significant training and experience with regard to detecting a driver impaired by the consumption of alcohol, and in his opinion [Kratzer] was incapable of safely operating a motor vehicle.

Trial Court Opinion, 12/4/19, at 7 (unnecessary capitalization omitted).

Our review of the suppression record reflects the following. Trooper Judson testified that he completed his police training at the Pennsylvania State Police Academy, and has been employed by the Pennsylvania State Police for two and one-half years. N.T., 11/25/19, at 6. While at the police academy, he received training on identifying impaired drivers who are under the

---

[5] Kratzer makes much of the fact that there was no evidence that he drove erratically, had slurred speech, or trouble communicating with the trooper. However, evidence of erratic driving, slurred speech, or other specific factors is not a necessary precursor to a finding of DUI. *See Salter*, 121 A.3d at 995 (noting that for probable cause we do not employ a mechanical consideration of specific factors, but rather look to the totality of the circumstances presented).

influence of alcohol. *Id*. at 7.[6] Trooper Judson explained that signs of impairment include, *inter alia*, bloodshot eyes, odor of alcoholic beverages on or about the individual, and slurred speech. *Id*. An additional cue is provided when a driver is wearing a wristband from an establishment that serves alcohol. *Id*. at 9. While at the police academy, Trooper Judson received training on FSTs prescribed by the National Highway and Traffic Safety Administration ("NHTSA"). *Id*. He estimates that he has conducted approximately thirty traffic stops where he eventually suspected that the individual was driving while impaired and arrested them. *Id*. at 10. The trooper estimated that he had administered the walk-and-turn and one-leg-stand FSTs on twenty-five occasions prior to his encounter with Kratzer. *Id*.

Trooper Judson testified that, on the night of May 27, 2018 and extending into the early morning hours of May 28, 2018, he was working at a DUI checkpoint in Snyder County. *Id*. at 10-11. All cars were required to pass through the checkpoint, and as they did so, the troopers interacted with drivers and looked for signs of impairment. *Id*. at 12. Shortly after midnight, he encountered Kratzer, who was driving a silver sedan and wearing a wristband. *Id*. Kratzer told Trooper Judson that he was driving home after watching races at the Port Royal Speedway. *Id*. at 13. Kratzer also told the trooper that he had consumed alcohol, consisting of a "couple" or a "few"

---

[6] Following the arrest in this case, Trooper Judson completed ARIDE training, which is advanced recognition of impaired drivers. N.T., 11/25/19, at 7-8.

drinks, prior to driving home. *Id*. at 14, 39. Trooper Judson observed certain signs of impairment, including bloodshot eyes and a moderate odor of alcohol on Kratzer's person. *Id*. Trooper Judson asked Kratzer to exit his vehicle and directed him to an area in front of a marked police vehicle equipped with a video recording device. *Id*. at 17. Kratzer provided the trooper with his driver's license and vehicle registration, from which the trooper was able to ascertain that Krazter was 72 years old. *Id*. at 19-20. The trooper was trained to take age into consideration when administering FSTs to individuals over sixty-five years of age. *Id*. at 20.

Trooper Judson then asked Kratzer to performed certain FSTs, including the walk-and-turn test and the one-leg-stand test. *Id*. at 18. The trooper instructed Krazter verbally, and physically demonstrated to him how the walk-and-turn test was to be performed. *Id*. at 20, 21-22. Trooper Judson asked Kratzer if there was anything that would limit his ability to perform the test, and Krazter indicated that he had an issue with one hip. *Id*. at 21, 47. Krazter did not explain the extent of his hip issue but indicated that he would try to complete the test. *Id*. at 21. Trooper Judson took the hip issue into consideration when he evaluated Kratzer's performance of the walk-and-turn test. *Id*. The trooper explained that there are eight clues of impairment to look for with that test, and that Krazter exhibited two of them. *Id*. at 19, 23. Specifically, Kratzer used his arms to balance himself, and he stepped off the line. *Id*. at 23. When the trooper asked Kratzer to perform the one-leg-stand

test, Kratzer did not mention the hip issue. *Id*. at 25. Trooper Judson explained that there are four clues of impairment to look for in administering the one-leg-stand test, and Krazter exhibited three of them; namely, he swayed, used his arms for balance, and put his foot down. *Id*. at 25-26.

Trooper Judson testified that the FSTs are not administered on a pass/fails basis; rather, any clues of impairment exhibited when performing FSTs are considered as part of the totality of circumstances indicating impairment. *Id*. at 23 Based on his education, training, experience with suspected impaired drivers, and his observations of Kratzer, Trooper Judson did not think that Kratzer could safely drive his vehicle and placed him under arrest on suspicion of DUI. *Id*. at 26-27.

Based on our review of the suppression record, and considering only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole, we conclude that the trial court's factual findings are supported by the record. Accordingly, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *See Griffin*, *supra*.

In this regard, we discern no error in the trial court's legal conclusions. As explained above, probable cause is not a *prima facie* showing of criminal activity. *Thompson*, 985 A.2d at 931. Thus, Trooper Judson was not required to "have had in hand evidence which would suffice to convict, as it is only the probability, and not a *prima facie* showing of criminal activity, that is

- 11 -

the standard for justifying arrest." *See Salter*, 121 A.3d at 996. Instead, Trooper Judson was only required to determine that the totality of the circumstances presented indicated that DUI was *one reasonable inference*. *See Quiles*, 619 A.2d at 298 (holding that criminality need not be the only, or even the most likely, inference). Further, the fact that other inferences could be drawn for some of the factors considered by Trooper Judson (*i.e.*, bloodshot eyes, the wearing of a wristband, odor of alcohol, poor performance on FSTs) does not render Trooper Judson's inference of impairment unreasonable. *See Moss*, 543 A.2d at 518.[7]

With respect to Kratzer's challenge to the admission of FSTs, he seemingly ignores that our caselaw recognizes that FSTs, such as those administered in this case, are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. *See Salter*, 121 A.3d at 996. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. *Id*. Importantly, FSTs are not meant to ascertain with certainty a driver's specific BAC, as Kratzer suggests, but only

---

[7] Kratzer devotes a significant portion of his argument to a discussion of the things he was able to do without incident, such as traveling at an appropriate speed when entering the DUI checkpoint, being able to stop his vehicle when directed to do so, his ability to communicate, retrieve his license and vehicle information, and to exit his vehicle. Kratzer points us to no authority which required the trial court to view the evidence in Kratzer's favor, or to consider irrelevant or neutral factors.

to provide the officer with information useful to determine whether the driver is impaired. *Id*.

We are mindful that Trooper Judson indicated that he was trained to take age into consideration when administering FSTs to individuals over sixty-five years of age. However, we find it significant that the trooper testified that he was aware of Kratzer's age of seventy-two, and that he relied upon his training when reaching his probable cause determination. N.T., 11/25/19, at 19-20, 26-27. Thus, the trial court could reasonably infer that, based on the trooper's training, he took Kratzer's advanced age into account when considering his poor performance on the FSTs.[8] *See Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007) (holding that, in determining whether an officer has probable cause, courts look to the totality of the circumstances "as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training").

Importantly, Kratzer presented no evidence or testimony that the NHTSA guidelines *prohibit* the administration of FSTs to individuals over the age of sixty-five, or mandate that the results of such tests have *no value* when the individual performing them is over sixty-five-years old. Moreover, even if Kratzer had successfully performed the FSTs, it would not have

_____

[8] Trooper Judson indicated that he took Kratzer's hip issue into account when evaluating his performance of the walk-and-turn test. *See* N.T., 11/25/19, at 21.

- 13 -

precluded Trooper Judson from potentially developing probable cause, since reasonable grounds to arrest for suspicion of DUI does not require the failure of FSTs. *See Slonaker*, 795 A.2d at 402; *see also Salter*, 121 A.3d at 997 (holding that failing FSTs is not a requirement for a determination of probable cause to arrest on suspicion of DUI). Accordingly, we conclude that the trial court had ample evidence upon which to find that Trooper Judson had probable cause to arrest Kratzer for DUI, and that the trial court did not err by declining to grant Kratzer's motion to suppress. Thus, Kratzer's first issue warrants no relief.

In his second issue, Kratzer contends that the verdict of guilt was against the weight of the evidence. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

- 14 -

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original).

Kratzer contends that the verdict was contrary to the weight of the evidence because the Commonwealth failed to establish that his mental and physical faculties were impaired such that he could not safely operate a motor vehicle. In making this argument, Kratzer once again relies primarily on the various things he was able to do without incident. Specifically, he points out

that he drove into the DUI checkpoint without issue, conversed with Trooper Judson, provided the requested vehicle information, and exited his vehicle without difficulty. While Kratzer acknowledges that the trooper observed bloodshot eyes and a moderate odor of alcohol, he claims that these factors are not dispositive of impairment or that his BAC was above .08%. With respect to the FSTs, Krazter acknowledges that he performed them poorly. However, he argues that the clues that Trooper Judson observed when Kratzer performed these tests were not indicative of impairment or that his blood alcohol content was above a .08.

Here, the trial court determined that the elements for each DUI conviction were supported by the record that there was nothing about the verdicts that would "shock one's sense of justice." Trial Court Opinion, 4/15/20, at 7. The trial court observed that, while Kratzer referred to the various factors considered by Trooper Judson in making his probable cause determination, Kratzer did not evaluate them in their totality. *Id*. at 4. As the trial court explained:

> [Kratzer] seems to forget that the events must be analyzed in terms of a "totality of the circumstances" – [nothing] says that a DUI arrest necessitates a specific observation by the officer of impaired driving; nor that there be direct evidence that a defendant's mental and physical faculties were visibly impaired; nor that a specific time must be assigned to an admission by a defendant that he or she has consumed alcohol; nor that the existence of glassy bloodshot eyes or odor of alcohol about a defendant's person is irrelevant to the probable cause determination. . . . It is the sum total of these various observations that furnish the requisite probable cause.

*Id*. at 3-4.

We discern no abuse of discretion by the trial court in arriving at its determination that the verdict of guilt did not shock the conscious. Accordingly, Kratzer's second issue entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/21/2021